**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:25-CV-00299-TDS-JLW**

LIQUIDIA TECHNOLOGIES, INC.,

     *Plaintiff*,

    v.

UNITED THERAPEUTICS
CORPORATION,

     *Defendant*.

**ORAL ARGUMENT REQUESTED**

**DEFENDANT UNITED THERAPEUTICS CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE
ALTERNATIVE, MOTION TO STAY**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS ................................................................................. 1

    I.     The Parties and The Present Action ................................................. 1

    II.    Roscigno's UTC Background ........................................................... 2

    III.   UTC's Trade Secrets Action Against Liquidia and Roscigno ...................... 4

    IV.   Roscigno's Contributions to Liquidia's '494 Patent .................................... 5

    V.    Roscigno Is Required to Assign Right and Title in the '494 Patent to
          UTC ................................................................................................... 6

    VI.   UTC's Breach of Contract Action Seeking Co-Ownership of
          the '494 Patent .................................................................................. 7

QUESTION PRESENTED ................................................................................. 8

LEGAL STANDARD ........................................................................................ 9

ARGUMENT ................................................................................................... 10

    I.     The Court Should Dismiss this Case Under Federal Rules 12(b)(1)
          and/or 12(b)(6) ............................................................................... 10

          A.    Liquidia Does Not Have Constitutional Standing Because
                 There is No Injury in Fact As UTC Is a Rightful Co-Owner of
                 the '494 Patent ................................................................. 11

          B.    Liquidia Does Not Have Prudential Standing Because UTC Is
                 a Rightful Co-Owner of the '494 Patent ......................... 14

    II.    In the Alternative, UTC Requests a Stay of these Proceedings
          Pending Resolution of the State Court Matter ............................... 17

          A.    Application of the *Landis* Doctrine Strongly Favors a Stay ........... 18

          B.    Application of the *Colorado River* Doctrine Strongly Favors a
                 Stay .................................................................................. 19

CONCLUSION ............................................................................................... 23

Case 1:25-cv-00299-TDS-JLW    Document 26    Filed 06/20/25    Page 2 of 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akazawa v. Link New Tech. Int'l, Inc.*,
520 F.3d 1354 (Fed. Cir. 2008).................................................................. 20

*Ali v. Hogan*,
26 F.4th 587 (4th Cir. 2022) ...................................................................... 9

*Allen v. Wright*,
468 U.S. 737 (1984).................................................................................. 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................. 10

*Baker v. Carr*,
369 U.S. 186 (1962).................................................................................. 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................. 9, 10

*Carpenter, Tr. for H. Joe King, Jr. Revocable Tr. v. William Douglas
Mgmt., Inc.*,
132 F.4th 280 (4th Cir. 2025) .................................................................... 9

*Colonial Penn Ins. Co. v. Coil*,
887 F.2d 1236 (4th Cir. 1989) .................................................................. 15

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)............................................................................ 17, 19

*Corry v. CFM Majestic Inc.*,
2000 WL 1720649 (Fed. Cir. 2000)........................................................... 12

*Crowell v. North Carolina*,
2018 WL 6031190 (M.D.N.C. Nov. 16, 2018).......................................... 18

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998)................................................................ 16

*Fulcrum Int'l, Inc. v. Prince George Ctr. I, Inc.*,
503 F. App'x 193 (4th Cir. 2012) .............................................................. 9

Case 1:25-cv-00299-TDS-JLW    Document 26    Filed 06/20/25    Page 3 of 33

*Gen-Probe, Inc. v. Amoco Corp.*,
    926 F. Supp. 948 (S.D. Cal. 1996) ............................................................... 17

*Hirtenstein v. Cempra, Inc.*,
    348 F. Supp. 3d 530 (M.D.N.C. 2018), *aff'd sub nom. Janies v. Cempra,
    Inc.*, 816 F. App'x 747 (4th Cir. 2020) ......................................................... 15

*In re KBR, Inc.*,
    744 F.3d 326 (4th Cir. 2014) ...................................................................... 12

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) .............................................................. 10, 17, 18, 19

*Lewis v. Newton*,
    616 F. App'x 106 (4th Cir. 2015) ................................................................ 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) .................................................................................. 11

*Livengood v. N.C. Dep't of Pub. Safety*,
    2022 WL 17067594 (M.D.N.C. Nov. 17, 2022) ............................................. 15

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F.3d 1225 (Fed. Cir. 2019) ......................................................... 11, 12, 16

*Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*,
    840 F. Supp. 211 (E.D.N.Y. 1994) ............................................................. 21

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992) .................................................................................. 12

*McCants v. Nat'l Collegiate Athletic Ass'n*,
    2016 WL 8468060 (M.D.N.C. Aug. 12, 2016) .............................................. 10

*Md. Election Integrity, LLC v. Md. State Bd. of Elections*,
    127 F.4th 534 (4th Cir. 2025) ...................................................................... 9

*Megaro v. McCollum*,
    66 F.4th 151 (4th Cir. 2023) ......................................................................... 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ...................................................................................... 19

Case 1:25-cv-00299-TDS-JLW    Document 26    Filed 06/20/25    Page 4 of 33

*Moss v. Moss Tubes, Inc.*,
1997 WL 727611 (N.D.N.Y. Aug. 21, 1997) ........................................................ 20, 22

*Nallapati v. Justh Holdings, LLC*,
2023 WL 2436008 (E.D.N.C. Mar. 9, 2023) ............................................................... 17

*Neville v. Aldridge Constr., Inc.*,
2018 WL 3472189 (C.D. Cal. Apr. 10, 2018) ............................................................. 18

*One Up, Inc. v. Webcraft Techs., Inc.*,
1989 WL 118725 (N.D. Ill. Sept. 22, 1989) ................................................................ 21

*Pirkle v. Ogontz Controls Co.*,
1987 WL 19882 (E.D. Pa. Nov. 12, 1987), *aff'd*, 852 F.2d 1293 (Fed.
Cir. 1988) ............................................................................................................... 22

*Prencipe v. Kerv Wearables Ltd.*,
2017 WL 2335613 (N.D. Cal. May 30, 2017) ............................................................. 17

*RPost Holdings, Inc. v. Exacttarget, Inc.*,
2014 WL 12703780 (E.D. Tex. Sept. 29, 2014) .......................................................... 17

*Santrade, Ltd. v. General Elec. Co.*,
1990 WL 312778 (E.D.N.C. Dec. 6, 1990) ................................................................. 19

*Schering Corp. v. Roussel–UCLAF SA*,
104 F.3d 341 (Fed. Cir. 1997) .............................................................................. 16, 17

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
959 F.3d 1065 (Fed. Cir. 2020) ................................................................................. 11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................................................... 12

*Standard Ceramics, Inc. v. Carborundum Corp.*,
1998 WL 401653 (W.D.N.Y. June 24, 1998) ............................................................. 21

*Summa Four, Inc. v. AT & T Wireless Servs., Inc.*,
994 F. Supp. 575 (D. Del. 1998) ..................................................................... 20, 21, 22

*Taylor v. Taylor Made Plastics, Inc.*,
565 F. App'x. 888 (Fed. Cir. 2014) ........................................................................... 16

v

*Warth v. Seldin*,
　422 U.S. 490 (1975) ................................................................................................ 11

*WiAV Sols. LLC v. Motorola, Inc.*,
　631 F.3d 1257 (Fed. Cir. 2010) .............................................................................. 14

*Wilmington Trust, Nat'l Assoc. v. Nat'l Gen. Insurance Co.*,
　2021 WL 2531063 (M.D.N.C. June 21, 2021) (Schroeder, J.) ............................ 18, 19

**Statutes**

35 U.S.C. § 262 ........................................................................................................... 12

35 U.S.C. § 281 ........................................................................................................... 11

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ................................................................................. 9, 10, 12, 16

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 9, 14, 16

## TABLE OF EXHIBITS

| Exhibit No. | Title | Short Title |
|---|---|---|
| **Exhibit 1** | *United Therapeutics Co. v. Liquidia Technologies, Inc. and Robert Roscigno*, Case No. 21-CVS-4094, D.E. No. 155, Complaint (N.C. Super. Ct. Durham Cnty. Sept. 7, 2023) | Trade Secret Second Amended Complaint |
| **Exhibit 2** | *United Therapeutics Co. v. Robert Roscigno and Liquidia Technologies, Inc.*, Case No. 24-CV-03755-310, Complaint (N.C. Super. Ct. Durham Cnty. May 29, 2024) | BoC Complaint |
| **Exhibit 3** | *United Therapeutics Co. v. Liquidia Technologies, Inc. and Robert Roscigno*, Case No. 21-CVS-4094, D.E. 268, Memorandum in Opposition to Defendant Robert Roscigno's Motion for Summary Judgment (N.C. Super. Ct. Durham Cnty. Mar. 6, 2024) | S.J. Opp. |
| **Exhibit 4** | Docket for *United Therapeutics Co. v. Liquidia Technologies, Inc. and Robert Roscigno*, Case No. 21-CVS-4094 (N.C. Super. Ct. Durham Cnty.) | Trade Secret Docket |
| **Exhibit 5** | Docket for *United Therapeutics Co. v. Robert Roscigno and Liquidia Technologies, Inc.*, Case No. 24CV03755-310 (N.C. Super. Ct. Durham Cnty.) | Breach of Contract Docket |

## INTRODUCTION

Liquidia Technologies, Inc. ("Liquidia") brought this suit against United Therapeutics Corp. ("UTC"), accusing UTC of infringing U.S. Patent No. 10,898,494 ("the '494 patent"), despite significant ongoing litigation in state court regarding whether Liquidia even owns the '494 patent. Indeed, UTC is a co-owner of the '494 patent.

This suit thus requires UTC to defend an infringement action for an asserted patent that it co-owns. To do so is against UTC's interest as it will require UTC to assert invalidity defenses that, if successful, would diminish the value of its property. Liquidia has no standing to bring a patent infringement suit against a co-owner of the same patent. Thus, UTC respectfully requests the Court dismiss this Action. Alternatively, UTC respectfully requests that this Court stay this Action until a resolution of the patent ownership disputes in the pending state court actions.

## STATEMENT OF FACTS

### I.      The Parties and The Present Action

UTC is focused on the development and commercialization of products designed to address chronic and life-threatening conditions, including pulmonary hypertension ("PH"). **Exhibit 1** (Trade Secret Second Amended Complaint), [1] ¶ 13. PH is a debilitating and often fatal disease characterized by elevated blood pressure in the lungs. One drug used to treat PH is treprostinil. D.E. 1, ¶ 17. UTC currently markets multiple forms of treprostinil

---

[1] This exhibit, along with all others in this memorandum, are attached to the Motion to Dismiss and are further subject to judicial notice, as explained in Section I.B.

including an inhaled dry powder (Tyvaso DPI®) which is the subject of this litigation. *Id.* at ¶ 22.

Liquidia is UTC's direct competitor whose business model depends on extensive copying and reliance on expertise developed by UTC. Liquidia has extensively hired ex-UTC employees and developed an inhaled treprostinil therapy (Yutrepia™) mimicking UTC's Tyvaso® and Tyvaso DPI®. Ex. 1, ¶ 16.

This suit is one of several pending litigations between the two companies. In this Action, Liquidia has asserted the '494 patent, which claims methods of treating PH at a certain dosage level with a dry powder form of treprostinil. *See* D.E. 1 at ¶ 22. Liquidia alleges that the administration of UTC's Tyvaso DPI® therapy infringes the '494 patent. *Id.* at Count I. The '494 patent, which issued in 2021, names four inventors including Robert Roscigno, one of the aforementioned ex-UTC employees hired by Liquidia. *See id.* at ¶ 18.

## II. Roscigno's UTC Background

From March 1997 through June 2007, Roscigno worked as an executive for UTC. **Exhibit 2** (BoC Complaint), ¶ 11. While at UTC, Roscigno was exposed to and had access to significant amounts of UTC's trade secret documents relating to clinical development, clinical studies, budgeting, planning, and regulatory processes at the FDA for treprostinil drug products indicated for the treatment of PH. Ex. 1, ¶¶ 30-32. Specifically, Roscigno led UTC's development of inhaled and injection-based treprostinil treatments for PH, Tyvaso® and Remodulin®. Ex. 2, ¶ 18. Roscigno was deeply involved in clinical development for Tyvaso®, and was specifically tasked with, among other responsibilities,

2

protocol design for clinical studies. *Id.*, ¶ 19. While at UTC, Roscigno contributed to inventions, discoveries, and ideas regarding specific and varying dosages at which inhaled treprostinil could be delivered, including: optimal dosing regimens; inhalation device configurations and designs that offered improved convenience or risk profiles, including dry powder inhaler products; and the formulation, methods of making, or use or delivery of treprostinil to reduce or limit side effects and permit delivery of greater amounts of treprostinil. *Id.*, ¶ 20.

Roscigno's work led to the development of patented inventions. While at UTC, Roscigno made or conceived, in whole or in part, inventions, discoveries, and ideas relating to the development of inhaled treprostinil, including those claimed in U.S. Patent No. 11,357,782 ("the '782 patent"), titled "Treprostinil Administration by Inhalation," which he assigned to UTC and is the subject of an infringement action before this Court in *United Therapeutics, Corp. v. Liquidia Techs., Inc.*, 25-cv-00368-TDS-JLW (M.D.N.C.).[2] Roscigno is a named inventor of the '782 patent.

In or about 2011, after he had left UTC, Roscigno began consulting for Liquidia, UTC's direct competitor. Ex. 1, ¶ 33; Ex. 2, ¶ 23. In or about 2015, Roscigno began working at Liquidia as Senior Vice President of Product Development. Ex. 2, ¶ 24. In this role, Roscigno was instrumental in the development of at least Yutrepia™, Liquidia's product designed to compete with Tyvaso®, including through his contributions to clinical

---

[2] The '782 patent is attached as Exhibit A to the Complaint in *United Therapeutics, Corp. v. Liquidia Techs., Inc.*, 25-cv-00368-TDS-JLW (M.D.N.C.).

Case 1:25-cv-00299-TDS-JLW    Document 26    Filed 06/20/25    Page 10 of 33

trials and Liquidia's regulatory submissions to the FDA. *Id.* Roscigno was also named an inventor on Liquidia's '494 patent. *See, e.g.*, *id.*, ¶ 25.

## III. UTC's Trade Secrets Action Against Liquidia and Roscigno

Upon leaving UTC in 2007, Roscigno took confidential and trade secret information with him. **Exhibit 3** (S.J. Opp), 12.

UTC first learned of Dr. Roscigno's pilfering of UTC's trade secrets during patent litigation between UTC and Liquidia because Liquidia produced back to UTC several of UTC's own trade secret documents with Roscigno as a custodian. *Id.*, 13. Counsel for UTC provided notice of its trade secret claims against Liquidia and Roscigno and immediately thereafter moved to amend the District of Delaware Complaint. Ex. 1, ¶ 22. The court ultimately denied UTC's motion because trial was imminent, further finding that UTC would not be prejudiced by filing a separate action to bring these claims. *Id.*

In December 2021, UTC filed an action against Roscigno and Liquidia alleging trade secret misappropriation and unfair or deceptive trade practices, *United Therapeutics Corp. v. Liquidia Techs., Inc. and Robert Roscigno*, No. 21-CVS-4094 (N.C. Super. Ct. Durham Cnty.) ("Trade Secret Matter"). *See generally* **Exhibit 4** (Trade Secret Docket). UTC's suit alleges that Roscigno and Liquidia misappropriated and used UTC confidential and trade secret information, providing them a competitive advantage in developing Yutrepia™ to directly compete with UTC's products. Ex. 1, ¶¶ 37-43.

UTC amended its complaint twice in the Trade Secret Matter as discovery revealed an expanded scope of Roscigno's and Liquidia's wrongdoing—Roscigno took to Liquidia

a much greater magnitude of documents than UTC originally understood—not a handful of documents, but virtual briefcases full of documents. *Id.*, ¶¶ 26-29. Discovery in the trade secret action uncovered that Roscigno took at least one external drive full of documents reflecting UTC's trade secrets. Ex. 3, 12. Forensic analysis in the trade secret action also established that, within days of UTC identifying its trade secret claims, Roscigno deleted UTC documents stored on his Liquidia-issued laptop. *Id.*, 13. These documents included information related to the inventions, discoveries, and ideas Roscigno made, conceived, reduced to practice or developed, in whole or in part, during his employment at UTC and in furtherance of UTC's business. Ex. 2, ¶¶ 28-29.

Roscigno filed a motion for summary judgment in the Trade Secrets Matter on January 5, 2024, which was denied on July 25, 2024. *See* Ex. 4, 7, 11. Liquidia filed a motion for summary judgment on July 3, 2024, which is currently pending. *Id.*, 7. The case has not yet been scheduled for trial.

## IV. Roscigno's Contributions to Liquidia's '494 Patent

Shortly after Roscigno started at Liquidia in September 2015, Liquidia filed a series of provisional patent applications 62/332,013 (May 5, 2016), 62/404,960 (October 6, 2016), 62/440,078 (December 29, 2016) 62/472,204 (March 16, 2017), followed by a PCT application in May 2017.[3] *See* D.E. 1-1, (60). Those applications led to the '494 patent,

---

[3] A provisional patent application does not mature into a patent and includes a subset of information (description of invention and cover sheet) that allows the filer to establish a filing date for the information included in the application. A PCT Application is an international patent application.

Case 1:25-cv-00299-TDS-JLW    Document 26    Filed 06/20/25    Page 12 of 33

asserted in this Action. *Id.* The '494 patent is entitled "Dry Powder Treprostinil for the Treatment of Pulmonary Hypertension," lists Roscigno as an inventor, and is assigned to Liquidia. *Id.*; Ex. 2, ¶ 25. Liquidia has other patents and at least one pending patent application also listing Roscigno as an inventor.

Much like his work at UTC, Roscigno's contributions to the '494 patent include work relating to clinical development, clinical studies, and FDA approval for Yutrepia™. Ex. 1, ¶ 43; Ex. 2, ¶ 25. Discovery in the trade secret action demonstrated that Roscigno repeatedly used UTC confidential information and trade secrets in furtherance of Liquidia's work. Ex. 3, 14. Accordingly, through Roscigno, Liquidia used UTC's confidential trade secret information to develop and obtain the '494 patent, and possibly others. Ex. 1, ¶ 43.

## V.  Roscigno Is Required to Assign Right and Title in the '494 Patent to UTC

Roscigno executed two employment agreements while at UTC. In 1997, Dr. Roscigno's enforceable employment agreement (the "1997 Agreement") obligated Roscigno not to:

> publish, disclose or use for [Roscigno's] own benefit or for the benefit of a business or entity other than [UTC], any secret or confidential matter, or proprietary or other information not in the public domain which was acquired by [Roscigno] during employment, relating to [UTC's] businesses, operations, customers, suppliers, products, employees, financial affairs, trade or industrial practices, trade secrets, technology, know-how or intellectual property.

Ex. 2, ¶ 13.

In 2007, Roscigno executed a new enforceable employment agreement ("2007 Agreement"), under which Roscigno agreed:

6

that the entire right, title, and interest, in and to all inventions, discoveries, materials, authorship, derivatives and results and proceeds of [Roscigno's] efforts in any form or media, including without limitation, all domestic and foreign patents, trade secrets and copyrights in and to all inventions, processes, written works, and other forms of intellectual property ('Intellectual Property'), which Executive makes, conceives, reduces to practice or develops, in whole or in part, during the terms of this Agreement and in the furtherance of the Company's business (whether or not made during the hours of employment or with the use of [UTC]'s materials, facilities or personnel, either solely or jointly with others), or after termination of employment if such Intellectual Property is based upon Confidential Information, shall be solely and exclusively owned by [UTC], its successors licensees and assigns, and no other individual or entity shall have any interest therein of any kind or nature.

*Id.*, ¶ 15.

The 2007 Agreement further required Roscigno to:

 promptly disclose and… assign and transfer to United Therapeutics all right, title and interest in and to any patentable or unpatentable inventions, discoveries, and ideas which are made or conceived in whole or in part by or on behalf of [Roscigno] in the course of or as a result of his employment hereunder, **or that relate directly to, or involve the use of Confidential Information and the Work**.

*Id.*, ¶ 16(emphasis added). The 2007 Agreement further provides that "[i]t is the express intention and agreement of the parties hereto that the provisions of Sections 7, 8, 9, and 10 hereof shall survive the termination of employment of [Roscigno]." *Id.*, ¶ 17. Those sections are enumerated above.

## VI.   UTC's Breach of Contract Action Seeking Co-Ownership of the '494 Patent

Based on Roscigno's refusal to assign to UTC his interest in the '494 patent, on May 29, 2024, UTC filed another suit in North Carolina state court against Roscigno and Liquidia, *United Therapeutics Corp. v. Roscigno and Liquidia Techs., Inc*, No. 24-CVS-

3755 (N.C. Super. Ct. Durham Cnty.) ("Breach of Contract Matter"). *See* **Exhibit 5** (Breach of Contract Docket), 2. That suit is an action for breach of contract and declaratory judgment that UTC is the owner of "any patentable or unpatentable inventions, discoveries, and ideas" Roscigno "made or conceived" while employed by Liquidia to the extent they "involve the use of [UTC's] Confidential Information" as defined in Roscigno's UTC employment agreement. Ex. 2, ¶ 40. UTC requested the court require Liquidia and Roscigno to properly assign title in the '494 patent to UTC, as well as impose a constructive trust over any "inventions, discoveries, and ideas" Roscigno "made or conceived' while employed at Liquidia to the extent they "involve the use of [UTC's] Confidential Information." Ex. 2, 10-11.

Roscigno and Liquidia moved to dismiss the Breach of Contract Matter on July 30, 2024. Ex. 5, 2. Two days later, the court granted the parties' joint motion for a limited stay pending resolution of the motion to dismiss the Breach of Contract Matter and Liquidia's motion for summary judgment in the Trade Secrets Matter. *Id.* The court held a hearing covering both motions on December 19, 2024, and recently denied Liquidia and Roscigno's motion to dismiss on May 27, 2025. *Id.*, 1.

## QUESTION PRESENTED

1. Should the Court dismiss this Action because Liquidia lacks the standing to bring suit?

2. Alternatively, should the Court stay this Action pending the resolution of the Trade Secret and Breach of Contract Matters?

8

## LEGAL STANDARD

A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and is properly brought under Fed. R. Civ. P. 12(b)(1). *Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022); *see also* Fed. R. Civ. P. 12(b)(1); *Md. Election Integrity, LLC v. Md. State Bd. of Elections*, 127 F.4th 534, 537 (4th Cir. 2025). In determining whether a complaint "alleged a direct injury capable of conferring Article III standing to sue," the court views the factual allegations in the light most favorable to the plaintiff, but the court "need not, however, accept those allegations that constitute nothing more than legal conclusions or naked assertions." *Ali*, 26 F.4th at 596 (internal quotations omitted). To prevail against a motion to dismiss under 12(b)(1), "the plaintiff bears the burden of proving the existence of subject-matter jurisdiction." *Fulcrum Int'l, Inc. v. Prince George Ctr. I, Inc.*, 503 F. App'x 193, 194 (4th Cir. 2012).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023). When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Carpenter, Tr. for H. Joe King, Jr. Revocable Tr. v. William Douglas Mgmt., Inc.*, 132 F.4th 280, 284 (4th Cir. 2025). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice

of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A stay is particularly appropriate, and within the sound discretion of the district court . . . where the outcome of another proceeding may impact or be dispositive of issues pending in the instant case before the court." *McCants v. Nat'l Collegiate Athletic Ass'n*, 2016 WL 8468060, at *1 (M.D.N.C. Aug. 12, 2016).

## ARGUMENT

This Court should dismiss this case under either 12(b)(1) for lack of constitutional standing due to Liquidia's lack of an injury in fact or under 12(b)(6) due to the lack of prudential standing. Alternatively, this Court should stay this case until the completion of both the Trade Secret and the Breach of Contract Matters to protect UTC from being forced to litigate against a patent it should rightfully own.

## I.    The Court Should Dismiss this Case Under Federal Rules 12(b)(1) and/or 12(b)(6)

In patent cases, there are two separate standing requirements: (1) constitutional standing under Article III, which establishes when a plaintiff may invoke judicial power and implicates the court's subject matter jurisdiction; and (2) the statutory prerequisite (*i.e.*,

10

"statutory standing" formerly referred to as "prudential standing") under 35 U.S.C. § 281, which establishes when a party may obtain relief under the patent laws and does not implicate subject matter jurisdiction. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4, (2014)); *see also Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020).

Liquidia lacks both constitutional standing as well as statutory standing to sue UTC for infringement of the '494 patent because UTC is at least a co-owner.

## A. Liquidia Does Not Have Constitutional Standing Because There is No Injury in Fact As UTC Is a Rightful Co-Owner of the '494 Patent

UTC is at least a rightful co-owner of the '494 patent. Liquidia thus lacks standing to sue UTC for infringement of the '494 patent.

Courts have several justiciability doctrines to enforce the case-or-controversy requirement of Article III of the Constitution, and "perhaps the most important of these doctrines" is the requirement that "a litigant to have standing to invoke the power of a federal court." *Allen v. Wright*, 468 U.S. 737, 750 (1984) (internal quotations omitted). "[T]he standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). To establish standing the plaintiff must "show that its case or controversy is amenable to resolution by a federal court, by demonstrating that it suffers an injury which can be fairly traced to the

11

defendant and likely redressed by a favorable judgment." *Lone Star*, 925 F.3d at 1234

(citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992)). The plaintiff's burden can

only be met by establishing that its injury was "an invasion of a legally protected interest

that is 'concrete and particularized' and 'actual or imminent, not conjectural or

hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S.

at 560).

Here, Liquidia has not and cannot suffer an injury in fact. Simply put, the law

provides that "*each of the joint owners of a patent may make, use, offer to sell, or sell the

patented invention* within the United States, or import the patented invention into the

United States, *without the consent of and without accounting to the other owners*." 35

U.S.C. § 262 (emphasis added). Further, "[i]t is a well-established principle of patent law

that a patent cannot be found to be infringed by one its co-owners." *Corry v. CFM Majestic

Inc.*, 2000 WL 1720649, at *4 (Fed. Cir. 2000).

UTC is a rightful co-owner of the '494 patent. As described above in Sections II-

VI, Roscigno's pilfering and subsequent use of UTC's trade secrets mean that UTC is at

least a co-owner of the '494 patent.[4] Roscigno was an executive at UTC from March 1997

to June 2007 where he signed the 1997 and 2007 Agreements requiring him to maintain

confidential information and to assign to UTC all intellectual property made, conceived, or

---

[4] "When a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *In re KBR, Inc.,* 744 F.3d 326, 333-34 (4th Cir. 2014).

reduced to practice during his employment or that involved the use of UTC confidential information. Ex. 2, ¶¶ 13-16. Roscigno left UTC in 2007, started consulting for Liquidia in 2011, and then became Liquidia's Senior Vice President of Product Development in 2015. *Id.*, ¶¶ 22-24. Roscigno was instrumental in Liquidia's development efforts related to Yutrepia™. Liquidia also listed Roscigno as a named inventor on the '494 patent as well as numerous other patent applications relating to his work at Liquidia. *Id.* at ¶¶ 24-25.

While at UTC, Roscigno had access to a significant number of trade-secret documents, including "detailed competitively sensitive financial projections and lifecycle management planning for UTC's clinical and research programs; specific know-how regarding obtaining FDA approval for treprostinil sodium drug products indicated for treatment of [pulmonary arterial hypertension], including specific methodologies for demonstrating adequate safety data and strategies for how to preempt FDA concerns based on template(s) of UTC's submissions; and other non-public subject matter that is the intellectual property of UTC." Ex. 1, ¶ 32. Roscigno then "intentionally collected and took UTC trade secret documents" and "brought these documents—involving UTC's efforts to gain approval for its own product—to Liquidia and used them during Liquidia's efforts to gain approval for its putative competing inhaled treprostinil product." *Id.*, ¶¶ 2, 33.

Liquidia's and Roscigno's misappropriation of UTC trade secrets, as well as Roscigno's breach of contract, are more than enough to make UTC a co-owner of the '494 patent. As discussed, UTC has filed two lawsuits against Liquidia regarding these issues. UTC has asked that the court in the Trade Secrets Matter to enjoin Liquidia from any

benefit arising from its misappropriation. *Id.*, ¶ 54. In the Breach of Contract Matter, UTC requests that the court assign UTC ownership of, and impose a constructive trust over, any Roscigno inventions, discoveries, or ideas made or conceived while employed at Liquidia that involve the use of UTC's confidential information. Ex. 2, 10-11. Based upon Liquidia's and Roscigno's misappropriation of trade secrets and the requirements of Roscigno's employment agreements, UTC is a rightful co-owner of the '494 patent.

"[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010). Liquidia does not possess an exclusionary right because UTC is a rightful co-owner of the '494 patent. Further, Liquidia could not possess an exclusionary right against UTC because UTC is a rightful co-owner entitled to all rights and is not restrained in any amount. Liquidia lacks the injury in fact requirement to obtain federal standing because UTC is a rightful co-owner of the '494 patent.

### B. Liquidia Does Not Have Prudential Standing Because UTC Is a Rightful Co-Owner of the '494 Patent

This Court should dismiss this complaint because Liquidia cannot state a claim to relief that is plausible on its face because UTC is a rightful co-owner of the '494 patent.

A court can dismiss a complaint if it "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a motion to dismiss, "[a] district court is required to consider documents incorporated into the complaint and documents attached to a motion

14

to dismiss that are integral to and relied on in the complaint." *Lewis v. Newton*, 616 F. App'x 106 (4th Cir. 2015) (internal citations omitted). Additionally, "a court may take judicial notice of matters of public record in considering a motion to dismiss." *Id.*

Here, the documents relied on in Sections II-VI of the Statement of Facts and Section I.A. of the Argument are of the types that should be considered in this determination as well. First, these documents are all amenable to judicial notice. *See Hirtenstein v. Cempra, Inc.*, 348 F. Supp. 3d 530, 549 (M.D.N.C. 2018) (noting that "a court may consider facts and documents subject to judicial notice" on a motion to dismiss), *aff'd sub nom. Janies v. Cempra, Inc.*, 816 F. App'x 747 (4th Cir. 2020); *see also Livengood v. N.C. Dep't of Pub. Safety*, 2022 WL 17067594, at *2 (M.D.N.C. Nov. 17, 2022) (quoting *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records."). The public complaints, public motion to dismiss, and public motion for summary judgment filings are all court records that are publicly available. Additionally, these documents are all integral to the complaint filed in the present matter because they are central to the ownership of the only patent at issue in this matter. *See Hirtenstein*, 348 F. Supp. at 549 (noting that courts may consider documents attached to a motion to dismiss where they are integral to the complaint and authentic). The Court is within its discretion to consider the previously referenced documents.

This Court should dismiss this Action due to Liquidia's lack of prudential standing because a co-owner of a patent cannot bring suit unless are co-owners are included in the

15

suit, because a co-owner of a patent cannot be sued for infringement of that patent, and/or because Liquidia does not have any rights against UTC related to the patent at issue. *See Lone Star*, 925 F.3d at 1235 ("[M]otions to dismiss based on 'statutory standing' defects are properly brought under Rule 12(b)(6) rather than Rule 12(b)(1) in recognition of the fact that such defects are not jurisdictional.").

First, UTC is a rightful co-owner of the '494 patent due to the misappropriation of trade secrets and breach of contract by Liquidia and Roscigno. *See supra* §§ II-VI; *see also* § I.A. Even if Liquidia is a co-owner of the '494 patent, it cannot assert the '494 patent in litigation without the consent of all co-owners. *See Ethicon, Inc. v. U.S. Surgical Corp.,* 135 F.3d 1456, 1468 (Fed. Cir. 1998) ("[A]s a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit."); *see also Schering Corp. v. Roussel–UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997) ("[O]ne co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit."). Indeed, "[i]f any co-owner should refuse to join as a co-plaintiff, the suit must be dismissed for lack of standing." *Taylor v. Taylor Made Plastics, Inc.,* 565 F. App'x. 888, 889 (Fed. Cir. 2014). Because UTC is a rightful co-owner of the '494 patent—and would not join Liquidia as a plaintiff in this matter—Liquidia's suit must be dismissed.

Second, even if Liquidia is a co-owner of the '494 patent, Liquidia cannot bring a claim for infringement against its rightful co-owner, UTC. The Federal Circuit has explained that "[e]ach co-owner of a United States patent is ordinarily free to make, use,

16

offer to sell, and sell the patented invention without regard to the wishes of any other co-owner." *Schering Corp.*, 104 F.3d at 344. A "co-owner may not be prohibited from exploiting its rights in the patent." *Id*. Here, Liquidia is improperly attempting to restrict UTC's ability to make, use, offer to sell, and to sell products. That cannot be the case and requires the immediate dismissal of the suit.

For at least these reasons, this Court should dismiss this action, with prejudice.

## II. In the Alternative, UTC Requests a Stay of these Proceedings Pending Resolution of the State Court Matter

Should this Court deny dismissal, a stay of this action is warranted until the state court resolves ownership of the '494 patent in the Breach of Contract Matter. *See Nallapati v. Justh Holdings, LLC*, 2023 WL 2436008, at *9 (E.D.N.C. Mar. 9, 2023) (granting stay where state court faced an issue dispositive for the federal case and noting that the "interests of judicial economy and avoiding conflicting judgments all weigh heavily in favor of a stay"). Because of its dispositive nature, courts routinely stay federal actions pending resolution of the ownership issue in a separate state proceeding. *See, e.g.*, *Prencipe v. Kerv Wearables Ltd.*, 2017 WL 2335613, at *3 (N.D. Cal. May 30, 2017) (granting motion to stay pending resolution of state court litigation over patent ownership); *RPost Holdings, Inc. v. Exacttarget, Inc.*, 2014 WL 12703780, at *3 (E.D. Tex. Sept. 29, 2014) (same); *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 964 (S.D. Cal. 1996) (same). In deciding whether to stay a federal proceeding pending resolution of a parallel state court action, the Fourth Circuit has applied both the *Landis* doctrine, which concerns the right to discretionarily stay a case, and the *Colorado River* doctrine, which concerns abstention

17

from the exercise of federal jurisdiction. *Wilmington Trust, Nat'l Assoc. v. Nat'l Gen. Insurance Co.*, 2021 WL 2531063, at *11 (M.D.N.C. June 21, 2021) (Schroeder, J.) (applying both doctrines). Under either standard, a stay is warranted.

### A. Application of the *Landis* Doctrine Strongly Favors a Stay

A stay pending resolution of ownership by the state court is warranted under the *Landis* Doctrine. Courts consider three factors in deciding whether to stay proceedings under the *Landis* doctrine: "the interests of judicial economy, the hardship and inequity to the moving party in the absence of a stay, and the potential prejudice to the non-moving party in the event of a stay." *Crowell v. North Carolina*, 2018 WL 6031190, at *3 (M.D.N.C. Nov. 16, 2018). All three factors support issuance of a stay.

First, it is the interest of judicial economy to stay this proceeding. Liquidia's Complaint contains a single count for infringement of the '494 patent. The Breach of Contract Matter will resolve the question of ownership of the '494 patent. *Supra* § I.A. If UTC is a co-owner, Liquidia lacks standing to bring an infringement claim and this litigation would be moot. *See supra* § I.B. Therefore, "a stay will allow this Court to more efficiently manage its own docket and provide clarity for these proceedings." *Neville v. Aldridge Constr., Inc.*, 2018 WL 3472189, at *3 (C.D. Cal. Apr. 10, 2018). Second, absent a stay, UTC will have to proceed with expensive, distracting, and time-consuming litigation in federal court, defending itself against a patent it co-owns. More troubling, UTC will likely be forced to take adverse positions with respect to the validity of a patent that it co-owns. *See id.* ("If the Court proceeds with this action, [Defendants] will face at least some

18

hardship by having to take adverse positions to patents it believes it owns."). Third, Liquidia will suffer no prejudice from the issuance of a stay. The '494 patent issued on January 26, 2021, and UTC launched Tyvaso DPI® in 2022. Yet Liquidia waited three years to bring this suit. Moreover, Liquidia is not seeking injunctive relief. *See* D.E. 1 at 17. If Liquidia prevails in the Breach of Contract matter, it is "still entitled to continue the patent infringement case in this court, with any damages accruing during the time that the stay is in effect." *Santrade, Ltd. v. General Elec. Co.*, 1990 WL 312778, at *2 (E.D.N.C. Dec. 6, 1990). Because each of the three *Landis* factors weighs in favor of UTC's request, this Court should issue the stay.

### B. Application of the *Colorado River* Doctrine Strongly Favors a Stay

Alternatively, to the extent the *Colorado River* doctrine is the applicable standard, a stay is similarly warranted. The *Colorado River* doctrine requires a two-prong assessment. As a threshold matter, the court must determine "whether there are parallel federal and state proceedings." *Wilmington Trust*, 2021 WL 2531063, at *10. If so, the court then analyzes six factors to determine if they weigh in favor of a stay: (i) presence of *res* or property; (ii) inconvenience of the federal forum; (iii) avoidance of piecemeal litigation; (iv) order in which jurisdiction was obtained; (v) rule of decision on the merits in federal court; and (vi) adequacy of the state court tribunal. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23, 26 (1983); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).

19

In patent cases, the parallelism threshold "is inappropriate" because the doctrine "can never be correctly applied in a patent infringement case context because jurisdiction is vested exclusively in the federal court." *Summa Four, Inc. v. AT & T Wireless Servs., Inc.*, 994 F. Supp. 575, 581 (D. Del. 1998). Courts therefore move directly to the analysis of the relevant factors in cases concerning patent infringement. *See Summa Four*, 994 F. Supp. at 583-84. As detailed below, because each factor either weighs in favor of a stay or is neutral, the Court should grant UTC's motion.

### 1. Assumption of Jurisdiction Over any *Res* or Property

The state court's jurisdiction over the property at issue, the '494 patent, supports a stay. Patent ownership, as opposed to issues of infringement or validity, is governed by state law. *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1357 (Fed. Cir. 2008) ("Our case law is clear that state law, not federal law, typically governs patent ownership."). If the state court determines that UTC co-owns the '494 patent, Liquidia will lack standing to claim infringement. *See Moss v. Moss Tubes, Inc.*, 1997 WL 727611, at *3 (N.D.N.Y. Aug. 21, 1997) (concluding first factor weighed in favor of stay and noting that "the state court's disposition of the [patent] at issue will have a profound impact" on plaintiff's standing to sue for infringement). Accordingly, this weighs in favor of a stay.

### 2. Inconvenience of the Federal Forum

The convenience of the federal forum factor is relevant only where a court finds that the two cases are parallel, an inquiry which is inapplicable in patent infringement cases.

20

*See Summma Four*, 994 F. Supp. at 583 ("Absent parallelism, [the inconvenience of the federal forum] plays little or no part in the analysis.").

### 3. Avoidance of Piecemeal Litigation

Where a state court is resolving the issue of patent ownership, it is in the interest of justice to stay a federal infringement action pending resolution. *See Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 840 F. Supp. 211, 218 (E.D.N.Y. 1994) ("[I]n the interest of justice, there can be no other course but to stay this action pending the resolution of [ownership of the patent in the] state action."); *One Up, Inc. v. Webcraft Techs., Inc.*, 1989 WL 118725, at *5 (N.D. Ill. Sept. 22, 1989) (holding that stay of proceedings pending resolution of ownership of patent in state court "most likely will avoid piecemeal litigation"). A stay in this Court will therefore avoid unnecessary and/or redundant litigation. Accordingly, this factor weighs in favor of a stay.

### 4. Order in which Jurisdiction Was Obtained

The Trade Secret Matter commenced December 2021, and the Breach of Contract Matter commenced May 29, 2024, long before Liquidia filed this action on April 21, 2025. *See Standard Ceramics, Inc. v. Carborundum Corp.*, 1998 WL 401653, at *2 (W.D.N.Y. June 24, 1998) (granting stay where "the State Action was commenced nearly two years before [the federal] case"). Accordingly, this factor weighs in favor of a stay.

### 5. Rule of Decision on the Merits in Federal Court

Although federal law governs whether the patent is valid and infringed, the dispositive issue of patent ownership is a matter of state law. *See Loral*, 840 F. Supp. at

217 (finding this factor weighed in favor of stay because "infringement claims are governed by federal law but ownership of these patents will be settled by state contract law"). "[W]here as here, the rules of decision with regard to the ownership of the patents are governed by state law, and the state court has substantially progressed with the task of deciding issues of state law of critical importance to a parallel action in federal court, principles of comity in addition to those of wise judicial administration strongly counsel deference to the state court determination by staying the federal action." *Pirkle v. Ogontz Controls Co.*, 1987 WL 19882, at *3 (E.D. Pa. Nov. 12, 1987), *aff'd*, 852 F.2d 1293 (Fed. Cir. 1988). Accordingly, this factor weighs in favor of a stay.

### 6.    Adequacy of State Court Tribunal

If the state court concludes that UTC co-owns the '494 patent, that decision will dispositively prevent Liquidia from pursuing any patent infringement claim in this case. If, however, the state court determines that UTC is not a co-owner, the present litigation can proceed. *See Summa Four*, 994 F. Supp. at 583-84 (determining factor neutral where ownership was at issue in state case and plaintiff could return to federal court to pursue its claims); *Moss*, 1997 WL 727611, at *4 (same). Accordingly, this factor is neutral.

<p style="text-align:center">*       *       *</p>

For these reasons, and those addressed above, this Court should stay these proceedings until the issue of ownership of the '494 patent is resolved by the state court.

## <u>CONCLUSION</u>

UTC respectfully requests this Court dismiss this Action because Liquidia does not have standing to bring suit. Alternatively, UTC respectfully requests that this Court stay the proceedings until the resolution of the Trade Secret and Breach of Contract Matters.

*[Remainder of page intentionally left blank]*

Dated: June 20, 2025

/s/ *Christopher G. Smith*
Christopher G. Smith
N.C. State Bar No. 22767
David A. Pasley
N.C. State Bar No. 52332
SMITH, ANDERSON,
BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-6745
Email: csmith@smithlaw.com
        dpasley@smithlaw.com

William C. Jackson
D.C. Bar. No. 475200
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20001
Telephone: (202) 346-4000
Email: WJackson@goodwinlaw.com

Douglas H. Carsten
CA. Bar No. 198467 McDermott Will &
McDermott Will & Emery LLP
12636 High Bluff Drive, Suite 325
San Diego, CA 92130
Telephone: (619) 467-1802
Email: Dcarsten@mwe.com

*Attorneys for United Therapeutics*
*Corporation*

24

**CERTIFICATE OF WORD COUNT**

The undersigned certifies that this brief is in compliance with Rule 7.3(d)(1) of the Local Rules for the Middle District of North Carolina, in that it contains less than 6,250 words, excluding the portions of the brief covered by Local Rule 7.3(d).

Date: June 20, 2025

/s/ *Christopher G. Smith*
Christopher G. Smith
N.C. State Bar No. 22767
David A. Pasley
N.C. State Bar No. 52332
SMITH, ANDERSON,
BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-6745
Email: csmith@smithlaw.com
        dpasley@smithlaw.com

*Attorneys for United Therapeutics Corporation*

25

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Court using the CM/ECF system.


Dated: June 20, 2025

<div style="margin-left: 50%;">

*/s/ Christopher G. Smith*
Christopher G. Smith
N.C. State Bar No. 22767
David A. Pasley
N.C. State Bar No. 52332
SMITH, ANDERSON,
BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-6745
Email: csmith@smithlaw.com
      dpasley@smithlaw.com

*Attorneys for United Therapeutics Corporation*

</div>