# Exhibit 1

STATE OF NORTH CAROLINA

DURHAM COUNTY

UNITED THERAPEUTICS
CORPORATION and LUNG
BIOTECHNOLOGY PBC,

                    Plaintiffs,

v.

LIQUIDIA TECHNOLOGIES, INC.
and ROBERT ROSCIGNO,

                    Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 4094


**SECOND AMENDED COMPLAINT**

Plaintiffs United Therapeutics Corporation ("United Therapeutics Corp.") and Lung Biotechnology PBC ("Lung Biotechnology") (Plaintiffs collectively referred to herein as "UTC"), pursuant to N.C. Gen. Stat. § 1A-1, Rule 15 and the Court's Order on Plaintiff's Motion to Amend (DE 120),[1] complaining of the actions of Defendants Liquidia Technologies, Inc. ("Liquidia") and Robert Roscigno, allege as follows:

### NATURE OF THE ACTION

1.      This action arises out of Roscigno's work as an executive for UTC, which develops drugs such as Tyvaso® (treprostinil) Inhalation Solution and Remodulin® (treprostinil) Injection for treating pulmonary arterial hypertension (PAH). After Roscigno left UTC, he eventually went to work for a direct competitor, Liquidia, which employed Roscigno as a Senior Vice President, Product Development. There, upon information and belief, Roscigno was instrumental in Liquidia's development of at

---

[1] By filing this Second Amended Complaint, UTC does not waive its right to appeal the Order on Plaintiff's Motion to Amend (DE 120) at the appropriate time.

least one product intended to compete with Tyvaso® (treprostinil) Inhalation Solution, including through his contributions to clinical trials and Liquidia's regulatory submissions to the FDA.

2. In 2021, during the closing days of discovery in patent litigation between UTC and Liquidia in the District Court for the District of Delaware, Liquidia produced documents that made clear that, years before, Roscigno had improperly taken confidential UTC documents with him when he left. He brought these documents—involving UTC's efforts to gain approval for its own product—to Liquidia and used them during Liquidia's efforts to gain approval for its putative competing inhaled treprostinil product. This discovery was and is of substantial concern to UTC because the misappropriated documents, upon information and belief, gave Liquidia an unfair advantage in its development efforts, enabling Liquidia to develop its product more quickly and/or for lower cost than it otherwise would have been able.

3. Discovery in this case to date has revealed that the volume and scope of Roscigno's and Liquidia's misappropriation of UTC's trade secrets was more expansive than initially appreciated.

4. In this lawsuit, UTC asks the Court to remedy this wrongful misappropriation and conduct by: (a) awarding injunctive relief to restrain all improper benefit from the misappropriation and to prevent irreparable harm and (b) awarding damages for injury caused by the misconduct of Defendants.

**PARTIES**

5. United Therapeutics Corporation is a public benefit corporation organized and existing under the laws of the State of Delaware. United Therapeutic

2

Corporation is registered to do business in North Carolina, and it has a place of business at 55 T.W. Alexander Drive, Research Triangle Park, North Carolina 27709. United Therapeutics Corporation has the legal authority to bring this claim.

6.     Lung Biotechnology PBC is a public benefit corporation organized and existing under the laws of the State of Delaware. Lung Biotechnology PBC is registered to do business in North Carolina, and it has a place of business at 1040 Spring Street, Silver Spring, Maryland 20910. Lung Biotechnology PBC is a wholly-owned subsidiary of United Therapeutic Corporation and has the legal authority to bring this claim. At all relevant times, Lung Biotechnology PBC has been a wholly-owned subsidiary of United Therapeutics Corporation.

7.     United Therapeutics Corporation and/or Lung Biotechnology PBC is the owner of, or successor-in-interest to, the rights to all trade secrets, other IP, and other property and legal interests that are at issue in this lawsuit.

8.     Liquidia Technologies is a corporation organized and existing under the laws of the State of Delaware, with a registered office at 2626 Glenwood Ave. Ste. 550, Raleigh, North Carolina 27608, and its principal place of business at 419 Davis Drive, Suite 100, Morrisville, North Carolina 27560.

9.     Dr. Robert Roscigno was employed by Liquidia Technologies as recently as July 2020 and, upon information and belief, is currently residing in Florida. During some or all of the time period relevant to this Complaint, Roscigno was a resident of Orange County, North Carolina and worked for UTC and Liquidia in North Carolina.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this matter under N.C. Gen. Stat. §§ 7A-240 and 7A-243.

11.     This Court has personal jurisdiction over Defendants under N.C. Gen. Stat. § 1-75.4.

12.     Venue is proper in this Court under N.C. Gen. Stat. § 1-82.

## FACTUAL ALLEGATIONS

### I.     Background on the parties.

13.     UTC is a biotech company focused on the development and commercialization of products designed to address the needs of patients with chronic and life-threatening conditions. UTC researches and develops treatments for cardiovascular and pulmonary diseases, pediatric cancers, and other orphan diseases. UTC is working on path-breaking cures and therapies, including development of a limitless supply of transplantable organs, for the betterment of humanity.

14.     Roscigno was employed by UTC. Before leaving the company in 2007, Roscigno served as President of then-Lung Rx, Inc., a wholly owned subsidiary of United Therapeutics Corp. Lung Biotechnology PBC is the successor-in-interest to Roscigno's employer, Lung Rx, Inc.

15.     Roscigno later joined competitor Liquidia Technologies as Senior Vice President of Product Development, where, upon information and belief, he was instrumental in Liquidia's drug development efforts related to at least LIQ861 (Yutrepia™), Liquidia's product intended to compete with Tyvaso®.

Case 1:25-cv-00299-TDS-JLW     Document 26-1     Filed 06/20/25     Page 5 of 25

16.     As further detailed below, Liquidia is a direct competitor of UTC's whose business model, upon information and belief, depends on extensive copying and reliance on expertise developed by UTC. Liquidia has, for example, extensively hired ex-UTC employees. And while the law may permit some copying, Liquidia and Roscigno's efforts have exceeded the legally permissible and instead have included misappropriating confidential UTC documents regarding UTC's products and business strategies.

## II.    UTC's discovery of Defendants' unlawful conduct in recent Delaware Action.

17.     On May 10, 2021, near the end of the fact discovery period in Hatch-Waxman litigation between UTC and Liquidia then-pending in the United States District Court for the District of Delaware, Liquidia made a substantial production of documents.

18.     Roscigno was identified as the custodian of certain documents produced by Liquidia, including certain documents that contain UTC trade secrets and others that indicate that such trade secrets were used in the development of Liquidia's proposed competing product.

19.     From Liquidia's May 2021 document production, UTC learned for the first time that Roscigno had taken UTC trade secret documents with him when he left UTC and that he subsequently brought them to Liquidia.

20.     The misappropriated trade secrets that UTC learned of during the course of discovery in the Delaware Action include:

a. Confidential regulatory correspondence regarding the FDA's clinical pharmacology review of Remodulin®, including a lengthy document entitled "New Drug Application Filing and Review Form" from the Office of Clinical Pharmacology and Biopharmaceutics contains questions the FDA was asking internally during the approval process. (*See, e.g.*, NC-LIQ00000004). This document would be valuable to UTC's competitors because it outlines issues that FDA is or was concerned with and how UTC resolved those concerns, ultimately resulting in Remodulin®'s approval. UTC's confidential regulatory correspondence and NC-LIQ00000004 specifically amounts to a roadmap through the FDA approval process for treprostinil, which is obviously valuable to a competitor developing a drug intended to compete with UTC. NC-LIQ00000004 includes detailed information bearing on which concerns the FDA had, which to try to preempt, and how to do so. To the extent there is a heavily redacted version of this document available on FDA's website,[2] the fully unredacted version that Roscigno absconded with and provided to Liquidia is only available upon request from FDA by individuals within UTC (none of whom authorized circulation outside of the company). And the confidential information that is valuable and

---

[2] UTC asserts no trade secret claim over the portions of this document, in redacted form, that are visible on the FDA's website.

6

protectable as a trade secret lies within the portions of NC-LIQ00000004 that were redacted and are unavailable publicly.[3]

b. UTC's confidential regulatory submissions, including a document entitled "Request for Designation of a Drug as an Orphan Drug for Inhaled Treprostinil Sodium for the Treatment of Patients with Pulmonary Arterial Hypertension" that UTC submitted to FDA on a confidential basis. (*See, e.g.*, NC-LIQ00000007). Similar to the confidential regulatory correspondence discussed above, this document is a valuable roadmap for maneuvering through FDA approval process. There is great value to a competitor of UTC in seeing what requests submitted to FDA that were ultimately successful look like. Additionally, much of the information contained in this submission is complicated, the product of extended research, and confidential to UTC. By non-limiting example, the number of individuals suffering from a disease and prevalence calculations are the product of much work on UTC's part, and data on these issues that FDA would accept is not necessarily publicly known. UTC has not published NC-LIQ00000007 and understands that FDA does not publish such submissions either, even in redacted form.

---

[3] These documents are referenced by the Bates number under which they were produced in this litigation, but each was also produced in the Delaware Action.

c. UTC's clinical trial protocols, which are an early look into its inhaled treprostinil program and exploration into whether the product works. (*See, e.g.*, NC-LIQ00000001). Specific portions of NC-LIQ00000001 containing UTC's trade secret information were, upon information and belief, helpfully highlighted by one or more Defendants, suggesting that Defendants were focused on the competitively valuable information pilfered from UTC. The portions of NC-LIQ00000001 that are highlighted in the version of the document produced by Liquidia in the Delaware litigation include information regarding aerosol characterization, study objectives, and indwelling procedures. Unhighlighted portions of the document also comprise trade secret information, such as the portions of the protocol outlining confidential and proprietary information regarding aerosol characterizations, including but not limited to concentrations, durations of inhalations, particle sizes, and how such details translate into the overall pharmacokinetic results. Far from being public, during the approval process and early stages of drug development during which the protocols are used, it is customary for drug companies to closely guard such information, as UTC did with its clinical trial protocols. (*See, e.g.*, NC-LIQ00000001).

d. UTC's confidential plans and identification of issues prepared during UTC's inhaled treprostinil development efforts and well before Tyvaso®

was approved by FDA. (*See, e.g.*, NC-LIQ00000005). The information in this document reflects confidential trade secrets that UTC had developed based on its experience in working with FDA and determining what stances and strategies would result in FDA approval or rejection of similar products.

e. UTC's confidential and competitively sensitive detailed financial records and forecasts, including detailed budgets. These records and forecasts would provide a competitor with critical information on (and the ability to copy) UTC's plan for clinical trials, the identity of relevant inspectors and/or investigators, vendor costs, marketing costs, consultant compensation, founders compensation, and costs of goods. UTC's financial records and forecasts show what UTC worked on, when, and how much they expected to spend and/or did spend. These records are, in essence, a financial blueprint for a competitor of UTC to copy and take advantage of UTC's drug development work. UTC's confidential and competitively sensitive detailed financial records and forecasts, if misappropriated, would show a competitor how much and where to allocate funds during drug development, as well as which steps to skip in order to preserve capital. These financial records and forecasts—individually and especially as a compilation—have substantial actual and potential commercial value to UTC. (*See, e.g.*, NC-LIQ00000006).

9

21.     Because he hid his unlawful conduct from UTC, UTC did not know, and could not reasonably have known, about Roscigno's breaches before May 2021 when Liquidia produced the evidence establishing Defendants' wrongful activity.

22.     UTC promptly filed a motion to amend its complaint to add trade secret and unfair competition claims in the Delaware litigation, but Liquidia opposed the amendment and, ultimately, the court denied UTC's motion because it determined that it would be "virtually impossible" to add new claims and a new defendant only four months before trial was scheduled to commence on March 28, 2022. *See* Order Denying P1.'s Mot. for Leave to File Second Am. Compl. at 2, *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 1:20-cv-00755-RGA-JLH (D. Del. Nov. 11, 2021), ECF No. 238.

23.     The court also determined that UTC would not be prejudiced by filing a separate action to bring these claims, which it determined did not overlap substantially with the patent claims in that matter. *Id.* n.1.

24.     Upon information and belief, the trade secret documents taken by Roscigno provided a competitive advantage to Liquidia in developing, testing, and seeking approval for LIQ861, which Liquidia intends to compete directly with UTC's product.

25.     On information and belief, Defendants used UTC's trade secret documents to shortcut their own development and approval processes.

## III. UTC's further discovery of Defendants' unlawful conduct in this action.

26. Discovery in this action is ongoing and UTC is continuing to learn the full scope of the documents Roscigno absconded with upon his departure from UTC and later took to Liquidia. So far, discovery has confirmed UTC's greatest fears—Roscigno departed not just with a handful of select trade secret documents, but with virtual briefcases full of them.

27. The additional misappropriated trade secrets that UTC has learned of (to date) during the course of discovery in this action include:

    a. NC-LIQ00006969: A confidential presentation containing the preliminary results from UTC's bioavailability study on treprostinil.

    b. NC-LIQ00100657: A presentation given by Meda Corp to UTC discussing marketing strategies and addressing physician interviews regarding Remodulin®.

    c. NC-LIQ00102074: A presentation given by Meda Corp to UTC regarding strategic considerations surrounding the launch of inhaled treprostinil.

    d. NC-LIQ00102582: Document with file name "Profits Growth Budget 2007-2010 (1.12.07)" containing similar trade secret information to NC-LIQ00000006, which is of similar value to a competitor.

    e. NC-LIQ00105059 & NC-LIQ00106536: UTC presentation for a meeting with investigators conducting the primary study of inhaled treprostinil that ultimately led to FDA approval of the same.

11

f.  NC-LIQ00107115: Roscigno's notes from a meeting with FDA, containing similar trade secret information to NC-LIQ00000004 and NC-LIQ00000007, which is of similar value to a competitor.

g.  NC-LIQ00107274: December 16, 2004 FDA meeting minutes with UTC.

28.  NC-LIQ00107344: Document titled "Treprostinil Sodium for Inhalation (Triumph I Study) Clinical Trial Protocol," containing similar trade secret information to NC-LIQ00000001, which is of similar value to a competitor. In addition, UTC has learned, during the course of discovery (to date), of the extent to which Liquidia and/or Roscigno in the scope of his employment for Liquidia used UTC trade secrets, including:

a.  Documents produced by Liquidia demonstrate Liquidia's misappropriation of the UTC trade secret information reflected in NC-LIQ00000001. For example, NC-LIQ00000071 is a Liquidia draft clinical protocol document produced by Liquidia for which Robert Roscigno was the custodian. (*See* NC-LIQ00000071). The document purports to address an ███████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████ Although LIQ861 refers to Liquidia's treprostinil product, the document contains language directly copied from the UTC clinical trial document found in Liquidia and Roscigno's possession in the Delaware Action, including

12

referring to a "project by Lung Rx Inc." (*E.g.*, *compare* NC-LIQ00000001

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████, *with* NC-LIQ00000071

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████).

b. Documents produced by Liquidia also demonstrate Roscigno (on behalf
of Liquidia) working on preparing for the pre-investigational new drug
("IND") meeting for Liquidia products by applying information
contained in UTC trade secret documents. *See, e.g.*, NC-LIQ00100650;
NC-LIQ00005230; NC-LIQ00005465. Documents produced by Liquidia
and created by Roscigno also demonstrate Roscigno's use (on behalf of
Liquidia) of UTC trade secret information regarding how to address and
preempt FDA concerns. (*See, e.g.*, NC-LIQ00005233 (reflecting use of
trade secret information contained in NC-LIQ00107146 and NC-
LIQ00107115); NC-LIQ00107146 (document created by Roscigno on
behalf of Liquidia with file name "Thoughts about what FDA may ask
us about 861"; reflects usage and/or screenshots of UTC trade secret
documents including NC-LIQ00107115 and NC-LIQ00107274); NC-

LIQ00006968 (email from Roscigno to a third party attaching NC-LIQ006969 where Roscigno indicated he was unsure whether the data within NC-LIQ00006969 was public)).

29. UTC notes that discovery is ongoing and Defendants continue to produce at a trickle pace documents reflecting UTC's trade secrets in their possession. Therefore, the above allegations are not an exhaustive list of the trade secret documents misappropriated by Defendants nor the uses of trade secret documents used within Liquidia by Defendants.

## III. Roscigno's access to UTC's trade secret documents.

30. By as early as 2003, Roscigno was tasked with leading UTC's development of inhaled and injection-based treprostinil treatments for pulmonary hypertension, and specifically PAH. The inhaled treprostinil treatment ultimately was and is marketed under the brand name Tyvaso®. The injection-based treprostinil treatment ultimately was and is marketed under the brand name Remodulin®.

31. Roscigno was deeply involved in clinical development efforts to bring Tyvaso® to market, and was specifically tasked with, among other responsibilities, participating in protocol design for clinical studies and coordinating development of UTC's treprostinil program, which formed the basis of FDA's approval of UTC's new drug applications for Tyvaso®.

32. During this work with UTC, Roscigno was exposed to and had access to significant amounts of UTC's trade secret documents, including: detailed competitively sensitive financial projections and lifecycle management planning for

14

UTC's clinical and research programs; specific know-how regarding obtaining FDA approval for treprostinil sodium drug products indicated for treatment of PAH, including specific methodologies for demonstrating adequate safety data and strategies for how to preempt FDA concerns based on template(s) of UTC's submissions; and other non-public subject matter that is the intellectual property of UTC.

33. Roscigno departed from UTC in 2007. Upon information and belief, before his departure Roscigno intentionally collected and took valuable UTC trade secret documents for his own and future employers' benefit and use.

34. The trade secret documents at issue in this lawsuit are the property of UTC. They had and have great value to UTC because, among other things, they detail and reflect UTC's substantial investment of time and money to develop its products and to get FDA approval for those products.

35. The trade secret documents misappropriated by Defendants were and remain key to UTC's successful development of Tyvaso®. Roscigno's misappropriation of them, and transfer and subsequent use of the trade secret documents by him, and, upon information and belief, by Liquidia, constituted a violation of UTC's property rights.

36. UTC made reasonable efforts to maintain the secrecy of its trade secrets by use of a number of measures, including: employing intellectual property rights, confidentiality, and non-competition provisions in employment agreements with those exposed to confidential and trade secret information; entering into non-

15

disclosure agreements with third parties that UTC contracted with; employing reasonable information technology security consistent with industry standards during the relevant time period; not publishing certain documents and information publicly to retain their confidentiality and trade secret status; marking documents as "confidential;" and by otherwise reasonably restricting access to confidential, strategic, intellectual property, and trade secret information.

## IV. Liquidia attempts to copycat UTC's success.

37.     For example, upon information and belief, by misappropriating UTC's detailed financial projections relating to the FDA approval process for its PAH products, Liquidia was able to avoid the guesswork and substantial financial risk that comes with budgeting for the development and approval of a new treatment. With the benefit of UTC's trade secrets, Liquidia was able to create a budget for its competing product without the substantial financial risk that UTC bore.

38.     In addition, upon information and belief, with the benefit of UTC's confidential testing protocol and its other FDA submissions, Liquidia was able to avoid the cost and risk of developing from scratch its own protocols for seeking approval of its competing product.

39.     The development of a new drug from the initial scientific work through FDA approval is long, expensive, and fraught with risk. The process can take many years and hundreds of millions of dollars, with no guarantee of success at the end. But if a company seeking to compete (or to copy) is able to cut short the time, expense, and, especially, the risk, it is extremely valuable to that competitor.

40.     Upon information and belief, that is exactly what Defendants were able to do by using UTC's trade secret information.

41.     In addition to its drug development efforts involving Roscigno, who had worked for UTC and brought confidential trade secret information and documents to Liquidia, Liquidia also sought patent protection relating to LIQ861, its proposed inhaled dry powder treprostinil product.

42.     Roscigno's employment at Liquidia started approximately September 2015, and Liquidia filed provisional patent application numbers 62/322,013, 62/404,960, and 62/440,078 in May, October, and December 2016, another provisional application (number 62/472,204) in March 2017, and a PCT application in May 2017. That PCT application eventually matured and issued as U.S. Patent No. 10,898,494 (the "'494 patent"), and other applications also naming Roscigno as an inventor remain pending. The '494 patent is entitled "Dry Powder Treprostinil for the Treatment of Pulmonary Hypertension."

43.     Upon information and belief, Roscigno's contribution to the '494 patent involved work relating to clinical development and clinical studies for LIQ861. That subject matter is included within the UTC confidential trade secret information that he took from UTC. Thus, upon information and belief, Liquidia through Roscigno used UTC's confidential trade secret information to develop and obtain the '494 patent, and possibly others.

17

## FIRST CAUSE OF ACTION
## MISAPPROPRIATION OF TRADE SECRETS
### N.C. Gen. Stat. §§ 66-152 *et seq.*
### (All Defendants)

44.　The allegations in the preceding paragraphs are incorporated by reference as if restated fully herein.

45.　UTC is the owner of the information, including the confidential and trade secret information, that constitutes its trade secret information pursuant to the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. §§ 66-152 *et seq.*

46.　These trade secrets were kept confidential and were subject to efforts by UTC to maintain their secrecy. UTC made reasonable efforts to maintain the secrecy of its trade secrets by use of several measures including employing confidentiality, intellectual property, and non-competition provisions in their employment agreements; providing clauses in employment agreements specifically delineating that UTC retains the right to its trade secrets; not publishing certain information and documents to retain their confidentiality; marking documents as "confidential;" and reasonably restricting access to confidential and trade secret information.

47.　Liquidia and Roscigno acquired and possessed UTC trade secrets, including, among other things, business and technical documents, product development documents, confidential clinical trial documentation, and confidential budget documents.

48.　These trade secrets provided value to UTC.

49.　Roscigno's and Liquidia's use, transfer, disclosure, and exploitation of information owned by UTC and constituting its trade secret information as described

herein constitutes misappropriation of UTC's trade secrets in violation of the North Carolina Trade Secrets Protection Act.

50. Such misappropriation was and continues to be intentional, willful, and malicious.

51. Such misappropriation, use, and benefit from UTC's trade secrets is ongoing.

52. Under the doctrine of *respondeat superior*, Liquidia, as Roscigno's employer during the relevant time period, is jointly and severally liable for Roscigno's actions.

53. UTC did not know, and could not reasonably have known, about Defendants' breaches until May 2021.

54. Pursuant to N.C. Gen. Stat. § 66-154(a), Defendants should be enjoined from any actual or threatened misappropriation of UTC's trade secrets and enjoined from any benefit from that information to eliminate any inequitable or unjust advantage arising from Defendants' misappropriation, including but not limited to injunctive relief preventing or postponing commercial release by Liquidia of any intended product to compete directly with Tyvaso®.

55. Pursuant to N.C. Gen. Stat. § 66-154(b), UTC is entitled to recover its economic loss caused by Defendants' misappropriations, or Liquidia's unjust enrichment caused by Defendants' misappropriations, whichever is greater, both of which are in an amount in excess of $25,000.

19

56.    Pursuant to N.C. Gen. Stat. § 66-154(c), UTC is entitled to recover punitive damages.

57.    Pursuant to N.C. Gen. Stat. § 66-154(d), UTC is entitled to recover reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
**UNFAIR OR DECEPTIVE TRADE PRACTICES**
**N.C. Gen. Stat. § 75-1.1**
**(Liquidia)**

58.    The allegations in the preceding paragraphs are incorporated by reference as if restated fully herein.

59.    Liquidia's actions as described in this complaint, including, but not limited to, the willful and malicious misappropriation of UTC's trade secrets constitute unfair or deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1.

60.    Liquidia's misappropriation of UTC's trade secret information has been, and will continue to be, substantially injurious to UTC's own business practice.

61.    Liquidia's acts as described herein are in or affecting commerce.

62.    Due to Liquidia's unfair and deceptive trade practices, UTC is entitled to injunctive relief preventing any wrongful benefit and irreparable harm, including but not limited to injunctive relief preventing or postponing commercial release by Liquidia of any intended product to compete directly with UTC's treprostinil product.

63.    Under the doctrine of *respondeat superior*, Liquidia, as Roscigno's employer during the relevant time period, is jointly and severally liable for Roscigno's actions.

20

64.     UTC did not know, and could not reasonably have known, about Defendants' breaches until May 2021.

65.     UTC has been and continues to be damaged in an amount in excess of $25,000 and is entitled to recover its economic losses.

66.     Pursuant to N.C. Gen. Stat. § 75-16, UTC is entitled to trebling of its actual damages.

67.     Pursuant to N.C. Gen. Stat. § 75-16.1, UTC is entitled to reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, UTC prays for relief as follows:

1.     That, pursuant to N.C. Gen. Stat. § 1A-1, Rule 38, UTC receive a trial by jury on all issues so triable.

2.     That Defendants be preliminarily and permanently enjoined from: (i) copying, sharing, disclosing, or using in any way any trade secrets or confidential information of UTC; and (ii) from any improper benefit from the misappropriated information to prevent irreparable harm, including being restrained from commercially releasing any product intended to compete directly with Tyvaso®.

3.     That UTC have and recover from Defendants compensatory damages in an amount to be proven at trial, which will be in excess of $25,000.

4. That the damages awarded to UTC be trebled pursuant to N.C. Gen. Stat. § 75-16.

5. That punitive damages be awarded to UTC pursuant to N.C. Gen. Stat. § 66¬154(c).

6. That UTC's reasonable attorneys' fees be allowed by the Court, pursuant to N.C. Gen. Stat. § 66-154(d), § 75-16.1, and/or any relevant law that permits an award of attorneys' fees.

7. That the costs of this action, including interest from the date this action was commenced, be taxed against Defendants; and

8. That UTC have such other and further relief as the Court deems appropriate.

This the 7th day of September 2023.

/s/    Eric M. David
Jim W. Phillips, Jr.
N.C. State Bar No. 12516
jphillips@brookspierce.com
Eric M. David
N.C. State Bar No. 38118
edavid@brookspierce.com
Kasi W. Robinson
N.C. State Bar No. 54239
krobinson@brookspierce.com
**BROOKS, PIERCE, McLENDON,**
 **HUMPHREY & LEONARD, L.L.P.**
Suite 2000 Renaissance Plaza
230 North Elm Street
Greensboro, NC 27401
Telephone: (336) 373-8850
Facsimile: (336) 378-1001

William C. Jackson (*pro hac vice*)
WJackson@goodwinlaw.com

**GOODWIN PROCTER LLP**
1900 N Street NW
Washington, DC 20036
Telephone: (202) 346-4216

Douglas H. Carsten (*pro hac vice*)
[Dcarsten@mwe.com](mailto:Dcarsten@mwe.com)
Art Dykhuis (*pro hac vice*)
[Adykhuis@mwe.com](mailto:Adykhuis@mwe.com)
**MCDERMOTT WILL & EMERY LLP**
18565 Jamboree Road, Suite 250
Irvine, CA 92612
Telephone: (949) 851-0633

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

This certifies that I have this day electronically filed the foregoing document with the North Carolina Business Court, which will serve all counsel of record in accordance with BCR 3.9(a).

This the 7th day of September, 2023.

/s/     Kasi W. Robinson
Kasi W. Robinson