# Exhibit 2

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE <br> SUPERIOR COURT DIVISION |
| DURHAM COUNTY | 24CV003755-310 |
| UNITED THERAPEUTICS CORPORATION, and LUNG BIOTECHNOLOGY PBC, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT ROSCIGNO and LIQUIDIA TECHNOLOGIES, INC., <br><br> Defendants. | **COMPLAINT** |

Plaintiffs United Therapeutics Corporation ("United Therapeutics Corp.") and Lung Biotechnology PBC ("Lung Biotechnology") (Plaintiffs collectively referred to herein as "UTC"), complaining of the actions of Defendants Robert Roscigno ("Roscigno") and Liquidia Technologies, Inc. ("Liquidia"), allege as follows:

## PARTIES AND JURISDICTION

1. United Therapeutics Corp. is a public benefit corporation organized and existing under the laws of the State of Delaware. United Therapeutics Corp. is registered to do business in North Carolina, and it has a place of business at 55 T.W. Alexander Drive, Research Triangle Park, North Carolina 27709. United Therapeutics Corp. has the legal authority to bring this claim.

2. Lung Biotechnology is a public benefit corporation organized and existing under the laws of the State of Delaware. Lung Biotechnology is registered to do business in North Carolina, and it has a place of business at 1040 Spring Street,

Silver Spring, Maryland 20910. Lung Biotechnology is a wholly-owned subsidiary of United Therapeutic Corp. and has the legal authority to bring this claim. At all relevant times, Lung Biotechnology has been a wholly-owned subsidiary of United Therapeutics Corp.

3. United Therapeutics Corp. and/or Lung Biotechnology is the owner of, or successor-in-interest to, the rights to all trade secrets, other IP, and other property and legal interests that are at issue in this lawsuit.

4. Liquidia is a corporation organized and existing under the laws of the State of Delaware, with a registered office at 2626 Glenwood Ave. Ste. 550, Raleigh, North Carolina 27608, and its principal place of business at 419 Davis Drive, Suite 100, Morrisville, North Carolina 27560.

5. Dr. Robert Roscigno was employed by Liquidia as recently as July 2020 and, upon information and belief, is currently residing in Florida. During some or all of the time period relevant to this Complaint, Roscigno was a resident of Orange County, North Carolina and worked for UTC and Liquidia in North Carolina.

6. This Court has subject matter jurisdiction over this matter under N.C. Gen. Stat. §§ 7A-240 and 7A-243.

7. This Court has personal jurisdiction over Defendants under N.C. Gen. Stat. § 1-75.4.

8. Venue is proper in this Court under N.C. Gen. Stat. § 1-82.

**FACTUAL ALLEGATIONS**

9. UTC is a biotech company focused on the development and commercialization of products designed to address the needs of patients with chronic

and life-threatening conditions. UTC researches and develops treatments for cardiovascular and pulmonary diseases, pediatric cancers, and other orphan diseases. UTC is working on path-breaking cures and therapies, including development of a limitless supply of transplantable organs, for the betterment of humanity.

10. Among other things, UTC develops drugs such as Tyvaso® (treprostinil) Inhalation Solution and Remodulin® (treprostinil) Injection for treating pulmonary arterial hypertension (PAH).

11. From March 1997 through June 2007, Roscigno worked as an executive for UTC. Before leaving the company in 2007, Roscigno served as President of then-Lung Rx, Inc., a wholly owned subsidiary of United Therapeutics Corp. Lung Biotechnology is the successor-in-interest to Roscigno's employer, Lung Rx, Inc.

12. From March 24, 1997, through at least March 4, 2007, Roscigno had an enforceable employment agreement with UTC (the "1997 Employment Agreement").

13. Among other things, the 1997 Employment Agreement obligated Roscigno not to "publish, disclose or use for [Roscigno's] own benefit or for the benefit of a business or entity other than [UTC], any secret or confidential matter, or proprietary or other information not in the public domain which was acquired by [Roscigno] during employment, relating to [UTC's] businesses, operations, customers, suppliers, products, employees, financial affairs, trade or industrial practices, trade secrets, technology, know-how or intellectual property."

14. In March 2007, Roscigno executed and entered a new, enforceable employment agreement with UTC (the "2007 Employment Agreement"), which was

3

supported by new and additional consideration, including a promotion and additional compensation and benefits.

15. Under the 2007 Employment Agreement, Roscigno agreed, among other things, "that the entire right, title, and interest, in and to all inventions, discoveries, materials, authorship, derivatives and results and proceeds of [Roscigno's] efforts in any form or media, including without limitation, all domestic and foreign patents, trade secrets and copyrights in and to all inventions, processes, written works, and other forms of intellectual property ('Intellectual Property'), which Executive makes, conceives, reduces to practice or develops, in whole or in part, during the terms of this Agreement and in the furtherance of the Company's business (whether or not made during the hours of employment or with the use [UTC]'s materials, facilities or personnel, either solely or jointly with others), or after termination of employment if such Intellectual Property is based upon Confidential Information, shall be solely and exclusively owned by [UTC], its successors licensees and assigns, and no other individual or entity shall have any interest therein of any kind or nature."

16. Roscigno further agreed to "promptly disclose and . . . assign and transfer to United Therapeutics all right, title and interest in and to any patentable or unpatentable inventions, discoveries, and ideas which are made or conceived in whole or in part by or on behalf of [Roscigno] in the course of or as a result of his employment hereunder, or that relate directly to, or involve the use of Confidential Information and the Work."

17. The 2007 Employment Agreement further provides, among other things, that "[i]t is the express intention and agreement of the parties hereto that the provisions of Sections 7, 8, 9, and 10 hereof shall survive the termination of employment of [Roscigno]." Sections 7, 8, 9, and 10 cover information at issue in this Complaint.

18. While at UTC, Roscigno was tasked with leading UTC's development of inhaled and injection-based treprostinil treatments for pulmonary hypertension, and specifically PAH. The inhaled treprostinil treatment ultimately was and is marketed under the brand name Tyvaso®. The injection-based treprostinil treatment ultimately was and is marketed under the brand name Remodulin®.

19. Roscigno was deeply involved in clinical development efforts to bring Tyvaso® to market, and was specifically tasked with, among other responsibilities, participating in protocol design for clinical studies and coordinating development of UTC's treprostinil program, which formed the basis of the FDA's approval of UTC's new drug applications for Tyvaso®.

20. While employed by UTC, Roscigno made or conceived, in whole or in part, inventions, discoveries, and ideas relating to the development of inhaled treprostinil. These inventions, discoveries, and ideas ("Roscigno's UTC Discoveries") include, without limitation:

    a. Inventions, discoveries, and ideas regarding specific and varying dosages at which inhaled treprostinil could be delivered, including

5

optimal dosages of treprostinil, and the number of breaths for such dosages;

b. Inventions, discoveries, and ideas regarding inhalation device configurations and designs that offered improved convenience or risk profiles, including dry powder inhaler products, and the idea that the device design could help increase efficiency of deep lung deposition;

c. Inventions, discoveries, and ideas regarding the formulation, methods of making, or use or delivery of treprostinil to reduce or limit side effects and permit delivery of greater amounts of treprostinil.

21. Roscigno's UTC Discoveries are "Intellectual Property," as defined in the 2007 Employment Agreement, that Roscigno made, conceived, reduced to practice or developed, in whole or in part, during his employment at UTC and in the furtherance of UTC's business, or after he left UTC.

22. Roscigno departed from UTC in June 2007.

23. In or about 2011, Roscigno joined Liquidia, UTC's direct competitor, as a consultant. Upon information and belief, before hiring Roscigno, Liquidia was aware of the terms of the 1997 Employment Agreement and the 2007 Employment Agreement between UTC and Roscigno.

24. In or about 2015, Roscigno became employed by Liquidia as Senior Vice President of Product Development. In that role, he was instrumental in Liquidia's drug development efforts related to at least LIQ861 (Yutrepia™), Liquidia's product

6

designed to compete with Tyvaso®, including through his contributions to clinical trials and Liquidia's regulatory submissions to the FDA.

25. Liquidia filed provisional patent application numbers 62/322,013, 62/404,960, and 62/440,078 in May, October, and December 2016, another provisional application (number 62/472,204) in March 2017, and a PCT application in May 2017. That PCT application eventually matured and issued as U.S. Patent No. 10,898,494 (the "'494 patent"), and other applications also naming Roscigno as an inventor remain pending. The '494 patent is entitled "Dry Powder Treprostinil for the Treatment of Pulmonary Hypertension."

26. Roscigno's contribution to the '494 patent involved work relating to clinical development, clinical studies, and FDA approval for LIQ861.

27. In spring 2021, during the closing days of fact discovery in patent litigation between UTC and Liquidia in the District Court for the District of Delaware, Liquidia produced documents that made clear that, years before, Roscigno had improperly taken confidential and trade secret documents owned by UTC when he left the company ("UTC's Misappropriated Property").

28. UTC's Misappropriated Property includes, among other things, indications of "Intellectual Property," as defined in the 2007 Employment Agreement, that Roscigno made, conceived, reduced to practice or developed, in whole or in part, during his employment at UTC and in the furtherance of UTC's business, or after he left UTC.

7

29. UTC's Misappropriated Property also includes important documentation and details regarding critical aspects of Roscigno's UTC Discoveries.

30. Upon information and belief, Roscigno contributed to the '494 patent and the development of LIQ861 by using Roscigno's UTC Discoveries for the benefit of Liquidia and to compete with UTC.

31. UTC learned these facts for the first time during discovery in a lawsuit brought by UTC against Roscigno and Liquidia alleging claims for violation of the North Carolina Trade Secrets Protection Act (N.C. Gen. Stat. § 66-152 et seq.) and the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1 et seq.) (Durham County Case No. 21-CVS-4094; the "Trade Secrets Lawsuit").

32. Until discovery was nearly complete in the Trade Secrets Lawsuit, UTC did not know, and could not have known, the full scope of Roscigno's use of Roscigno's UTC Discoveries at Liquidia to help develop LIQ861 and the '494 patent, for which Roscigno is a named co-inventor.

**FIRST CLAIM FOR RELIEF**
**BREACH OF CONTRACT**

33. The allegations in the preceding paragraphs are incorporated by reference as if fully restated herein.

34. The 1997 Employment Agreement and the 2007 Employment Agreement between UTC and Roscigno are each enforceable contracts.

35. Roscigno's conduct, detailed herein, breached his employment agreements with UTC because he failed, and has refused, to assign to UTC his interests in patents obtained by Liquidia that relied upon or benefited from

8

inventions, discoveries, materials, authorship, derivatives and results developed by Roscigno while employed by UTC.

36. UTC did not know, and could not reasonably have known, about Roscigno's breaches until Liquidia produced UTC's Misappropriated Property during discovery in the Delaware litigation in 2021.

37. Roscigno's breaches were a proximate cause of injury to UTC.

38. Because money damages will not afford UTC a complete or adequate remedy, UTC is entitled to specific performance under his employment agreements, requiring Roscigno to "assign and transfer to United Therapeutics all right, title and interest in and to any patentable or unpatentable inventions, discoveries, and ideas which are made or conceived in whole or in part by or on behalf of [Roscigno] in the course of or as a result of his employment" at UTC.

### SECOND CLAIM FOR RELIEF
### DECLARATORY JUDGMENT

39. The allegations in the preceding paragraphs are incorporated by reference as if restated fully herein.

40. A present and real controversy exists between the parties as to whether, under his employment agreements with UTC, Roscigno should be required to "assign and transfer to United Therapeutics all right, title and interest in and to any patentable or unpatentable inventions, discoveries, and ideas" he "made or conceived" while employed by Liquidia because they "involve the use of [UTC's] Confidential Information" as defined by the 2007 Employment Agreement.

41. Pursuant to N.C. Gen. Stat. §§ 1-253–1-267 and North Carolina Rule of Civil Procedure 57, Plaintiff is entitled to a judgment declaring that UTC is the owner of "any patentable or unpatentable inventions, discoveries, and ideas" Roscigno "made or conceived" while employed by Liquidia to the extent they "involve the use of [UTC's] Confidential Information" as defined by the 2007 Employment Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs United Therapeutics Corporation and Lung Biotechnology PBC pray for relief as follows:

1. That, pursuant to N.C. Gen. Stat. § 1A-1, Rule 38, Plaintiffs receive a trial by jury on all issues so triable.

2. That, pursuant to N.C. Gen. Stat. §§ 1-253–1-267 and North Carolina Rule of Civil Procedure 57, UTC be declared the owner of "any patentable or unpatentable inventions, discoveries, and ideas" Roscigno "made or conceived" while employed by Liquidia to the extent they "involve the use of [UTC's] Confidential Information" as defined by the 2007 Employment Agreement.

3. That the Court order Liquidia and Roscigno to execute the requisite documents and perform the requisite actions so as to assign an interest in "any patentable or unpatentable inventions, discoveries, and ideas" Roscigno "made or conceived" while employed by Liquidia to the extent they "involve the use of [UTC's] Confidential Information" as defined by the 2007 Employment Agreement.

4. That the Court impose a constructive trust over any "inventions, discoveries, and ideas" Roscigno "made or conceived" while employed by Liquidia to

the extent they "involve the use of [UTC's] Confidential Information" as defined by the 2007 Employment Agreement, and over any revenue derived by Defendants therefrom.

5. That the costs of this action, including interest, be taxed against Defendants.

6. That Plaintiffs have such other and further relief as the Court deems appropriate.

This the 29th day of May, 2024.

/s/ Eric M. David
Jim W. Phillips, Jr.
N.C. State Bar No. 12516
jphillips@brookspierce.com
Eric M. David
N.C. State Bar No. 38118
edavid@brookspierce.com
Kasi W. Robinson
N.C. State Bar No. 52439
krobinson@brookspierce.com
Gabrielle L. Motsinger
N.C. State Bar No. 59403
gmotsinger@brookspierce.com
**BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.**
Suite 2000 Renaissance Plaza
230 North Elm Street
Greensboro, NC 27401
Telephone: (336) 373-8850
Facsimile: (336) 378-1001

William C. Jackson (*pro hac vice forthcoming*)
WJackson@goodwinlaw.com
**GOODWIN PROCTER LLP**
1900 N Street NW
Washington, DC 20036
Telephone: (202) 346-4216

Douglas H. Carsten (*pro hac vice forthcoming*)
Dcarsten@mwe.com
Art Dykhuis (*pro hac vice forthcoming*)
Adykhuis@mwe.com
**MCDERMOTT WILL & EMERY LLP**
18565 Jamboree Road, Suite 250
Irvine, CA 92612
Telephone: (949) 851-0633

*Attorneys for Plaintiff*

12